UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Kristopher Lee Roybal, | Case No. 21-CV-2026 (KMM/ECW) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Paul Schnell, Comm'r of Corrections, | |
| Respondent. | |

This matter is before the undersigned United States Magistrate Judge on Petitioner Kristopher Lee Roybal's Amended Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Dkt. 6); Petitioner's Motion to Stay (Dkt. 4); and Petitioner's Motion to Accept Evidence Relating to the Petition (Dkt. 24). This case has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

## I.  FACTUAL BACKGROUND

On January 17, 2019, Petitioner Kristopher Lee Roybal ("Petitioner" or "Roybal") was convicted of one count of Second-Degree Controlled Substance, possession, in violation of Minnesota Statute Section 152.022. (Dkt. 6 at 1.)[1] Petitioner had pleaded not guilty, but agreed that a pretrial issue was dispositive, and reserved the right to appeal at least with respect to that issue. (Dkt. 6 at 1-2; Dkt. 20-1.) After a January 2019

---

[1]  Unless stated otherwise, references to page citations refer to the CM/ECF pagination.

stipulated-facts trial, the Cass County District Court found him guilty of a second-degree controlled-substance offense and imposed a 95-month executed prison sentence.

## II.     PROCEDURAL BACKGROUND

Roybal appealed his conviction to the Minnesota Court of Appeals, challenging the district court's denial of his motion to suppress, asserting that the impoundment of his vehicle and inventory search of his vehicle, which yielded the narcotics, was unreasonable, unnecessary, and a pretext for conducting a search for drugs. *See State v. Roybal*, No. A19-0733, 2020 WL 994990, at *1-3 (Minn. Ct. App. Mar. 2, 2020), *rev. denied* (May 27, 2020), *cert. denied*, 141 S. Ct. 405 (2020); *see also* Dkt. 7. The Minnesota Court of Appeals affirmed the decision of the trial court. *Roybal*, 2020 WL 994990, at *4-5. Petitioner sought review before the Minnesota Supreme Court, which was denied. (Dkt. 6 at 2.) It is unclear what issues were raised to the Minnesota Supreme Court, as that record is not before the Court. Petitioner asserts that the issues raised on review included whether all pretrial issues were preserved for appeal, not just the issue of suppression, and whether the Minnesota Court of Appeals applied the wrong standard when determining whether the district court erred by failing to suppress evidence seized during the search of Petitioner's vehicle. (*Id.* at 3.) Petitioner also filed a petition for a writ of certiorari to the United States Supreme Court, which was denied on October 5, 2020. *Roybal v. Minnesota*, 141 S. Ct. 405 (Oct. 5, 2020).

Petitioner also asserts that he filed a post-conviction petition on September 9, 2021 with the Cass County District Court in which he asserted the following grounds:

(1)     Ineffective assistance of counsel.

(2) *Brady v. Maryland* violation.

(3) Incorrect standard of review which deprived Petitioner of a full and fair review of his constitutional claims.

(4) Petitioner's agreement was with the state, not the court, which denied him a full review in the Court of Appeals.

(5) Petitioner requested a corrective process.

(Dkt. 6 at 3.) Petitioner states that he was unsure if he needed to bring the post-conviction motion first before commencing the present Petition and sought the stay for those purposes. (*Id.* at 3, 5.)

The present action was initiated on September 13, 2021. (Dkt. 1.)

The Amended Petition asserts the following grounds for the relief:

Ground One: Petitioner was not given the opportunity for a full and fair consideration of his search-and-seizure claim at trial and on direct review due to using a probable cause standard of review, depriving him of a subjective inquiry.

Ground Two: Due Process – Discovery violation – *Brady v. Maryland*. This claim is based on evidence of NCIC query searches performed by the arresting officers with respect to Petitioner's vehicle during the time period at issue.

Ground Three: The District Court's decision resulted in a decision that was based on an unreasonable determination of facts considering the evidence presented in state court proceedings, specifically that the deputy lied under oath and never provided a reason for the tow in the report in violation of Minnesota law and United States Constitution.

Ground Four: The deputy made an offer to have Petitioner's vehicle towed to a specific towing company of the other side of Cass Lake in order to induce Petitioner "to accent"[2] to towing, which constitutes bad faith.

---

[2] The Court interprets this as "to assent."

> Ground Five: The inventory search was unreasonable and a pretext for a criminal investigation and done in bad faith.

(Dkt. 6 at 5-14.)

Petitioner asserts that he has not exhausted Ground Two and his ineffective assistance of counsel of claims.[3] (*Id.* at 6.)

Respondent asserts in his response that Petitioner's claim of a discovery violation can be disposed of on its face, and therefore there is no need to stay the proceedings in federal court to await what happens in any state action. (Dkt. 20 at 4.) According to Respondent, to suggest that a discovery violation regarding the alleged non-disclosure of evidence somehow justifies the reversal of his decision to treat the motion to suppress as determinative does not withstand scrutiny of the record. (*Id.* at 3-4.)

### III.     AMENDED PETITION AND MOTION FOR STAY

**A.     Legal Standard**

A prisoner in state custody may seek relief in federal court by filing an application for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Habeas relief under § 2254 is warranted in three circumstances: (1) when a state court decision was contrary to clearly established federal law, (2) when a state court decision involved an unreasonable application of clearly established federal law, or (3) when a state court decision "was based on an unreasonable determination of the facts in light of the

---

[3] While Petitioner mentions an ineffective assistance of counsel claim, it is not listed as one of his grounds for relief.

4

evidence presented." 28 U.S.C § 2254(d)(1), (2). However, the application for a writ of habeas corpus will only be granted if "the applicant has exhausted the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(1)(A). Alternatively, a court may deny a petition on the merits even if the petitioner has not exhausted all state court remedies. 28 U.S.C. § 2254(b)(2).

In conformance with the principles of comity and federalism, the exhaustion doctrine requires state courts to have a "full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts," *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999), where "the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation omitted). Thus, "a prisoner must fairly present his federal constitutional claims to the **highest available state court**, (in Minnesota, the Minnesota Supreme Court), before seeking relief in federal court." *Fraction v. Minnesota*, 678 F. Supp. 2d 908, 916 (D. Minn. 2008) (emphasis added).

Fair presentment requires the prisoner to "refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." *Cox v. Burger*, 398 F.3d 1025, 1031 (8th Cir. 2005). Both the United States Supreme Court and the Eighth Circuit have noted that "[i]t is not enough to recite only . . . the facts necessary to state a claim for relief, or to make a general appeal to a constitutional guarantee as broad as due process." *Turnage v. Fabian*, 606 F.3d 933, 936 (8th Cir. 2010) (internal quotation marks and citations

omitted). A claim has not been fairly presented if the presiding court "must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin*, 541 U.S. at 32. More specifically:

> [E]ven if the opinion of the state court of appeals does not make any mention of a federal claim, a brief submitted to that court that sets forth the federal constitutional basis for a claim can satisfy the requirement that the petitioner 'apprise the state court of his claim that the . . . ruling of which he complained was not only a violation of state law, but denied him the due process of law guaranteed by the Fourteenth Amendment.'

*Fraction*, 678 F. Supp. 2d at 917 (quoting *Duncan v. Henry*, 513 U.S. 364, 366 (1995)). However, "[a] petitioner must present both the factual and legal premises of his claims to the state courts in order to exhaust the claims properly." *Dansby v. Hobbs*, 766 F.3d 809, 823 (8th Cir. 2014) (emphasis added). "The onus rests on the prisoner to present the substance of his federal claims in each appropriate state court . . . ." *Turnage*, 606 F.3d at 936 (quotation marks and citation omitted).

**B.     Analysis**

A federal court cannot adjudicate a habeas petition that presents both exhausted and unexhausted claims. *See Rhines v. Weber*, 544 U.S. 269, 273 (2005) (citing *Rose v. Lundy*, 455 U.S. 509, 518-19 (1982)). Here, Petitioner asserts that the Amended Petition contains both exhausted and unexhausted claims. There is a one-year statute of limitations for Section 2254 habeas petitions, making mixed petitions problematic, because if such a petition is dismissed pursuant to *Lundy* after the one-year statute of

6

limitations has expired, federal habeas review will not be available.[4] *Rhines*, 544 U.S. at 274-75.  To avoid this dilemma, a court may stay and hold in abeyance a mixed petition while the petitioner returns to state court to exhaust the unexhausted claims.  *Id*. at 275.  Indeed, Petitioner in his Amended Petition and Motion to Stay Petition seeks relief in the form of allowing a stay of the proceedings in order to seek post-conviction relief on the unexhausted claims.  (Dkt. 4; Dkt. 6 at 3.)  "Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts," a court may employ the stay-and-abeyance procedure only when the court finds "there was good cause for the petitioner's failure to exhaust his claims first in state court."  *Id.*  In addition, even if a petitioner shows good cause, a district court should not grant a stay when the "unexhausted claims are plainly meritless."  *Id.*  Moreover, a court may deny a stay when "the petitioner engaged in intentionally dilatory litigation tactics."  *Id.* at 278.

Here, Ground Two of the Petition states as follows:

GROUND TWO: Due Process – Discovery violation – *Brady v. Maryland*.

(a)     Supporting facts. . . :

#1) NCIC Query searches indicate that the arresting officer ran Petitioner's license plate the night/morning before his arrest at 03:55:32 a.m.

#2) NCIC Query Search indicates another plate search at 01:21:53 a.m. on the night in question.

#3) The Last NCIC Query Search indicate that the arresting officers identified Petitioner before initiating the traffic stop at 01:28:14.

---

[4]     The one-year limit began to run here on October 5, 2020, the date on which Roybal's petition for a writ of certiorari was denied.  *See Campa-Fabela v. United States*, 339 F.3d 993, 993-94 (8th Cir. 2003).

(Dkt. 6 at 7.)

According to Petitioner's supporting memorandum, the timing of the NCIC query searches was not disclosed until after the officer's testimony, which amounts to a *Brady* violation, as this evidence was favorable to him, could have been used for impeachment purposes, and could have helped to show that his arrest amounted to an illegal pretext for a search of the vehicle. (Dkt. 5 at 2-4.) As best as this Court can discern, Plaintiff asserts that according to arresting officer's report, on June 13, 2018 at 1:25 a.m., the deputy was sitting in a casino parking lot and observed a vehicle engaging in conduct that he believed based on his training and experience were indicative of narcotics activity. (*Id.* at 1-2.) Petitioner asserts that after the deputy started following the vehicle and observed that the vehicle did not have a working license plate light, making him unable to read the plate, the deputy pulled over Petitioner at approximately 1:31 a.m. (based on the time that the deputy's bodycam was activated). (*Id.* at 2.) According to Petitioner, the withheld NCIC query searches contradict the deputy's version of events, including that he was unable to read the plate and therefore pulled Petitioner over at 1:30 a.m., because there were license plate queries at 1:21 and 1:28 a.m. (*Id.* at 3.)

The Minnesota Court of Appeals found that Petitioner was properly stopped based on the following:

> On June 13, 2018, at approximately 1:25 a.m., Deputy Huston was parked at a casino in Cass County when he observed Roybal driving a vehicle with an unilluminated rear license plate. Roybal pulled into a nearby neighborhood and remained there for approximately five minutes. After leaving the neighborhood, Roybal drove on State Highway 200/371. Deputy Huston followed Roybal's vehicle and observed it traveling at speeds ranging from 38 miles per hour to 53 miles per hour in a 55 mile-per-hour zone.

8

Deputy Huston activated his squad car's emergency lights, and Roybal pulled onto the shoulder of Highway 200/371 near guardrails that separated the highway from Shingobee Bay. Deputy Huston approached the vehicle and told Roybal that he had stopped him based on his driving conduct and because his rear license plate light was not working. Roybal asked Deputy Huston if he could have someone from Breezy Point come get his vehicle. Deputy Huston responded, "[L]et's just see what we are going to do first." Deputy Huston asked Roybal where he was going and Roybal answered that he was going to Cass Lake.

Deputy Huston learned that Roybal's driver's license had been cancelled and that the two passengers in his vehicle had outstanding warrants for their arrests. Roybal and his passengers were placed under arrest. Deputy Huston asked Roybal if he could arrange for someone to retrieve his vehicle. Roybal responded that someone from Cass Lake could get the vehicle. Deputy Huston asked Roybal how long it would take for that person to arrive, and Roybal stated "probably about an hour." Deputy Huston said that he could not let the vehicle sit there for an hour. Deputy Huston testified that because Roybal's vehicle was a "traffic hazard," he decided to tow the vehicle.

Roybal asked Deputy Huston if someone from Breezy Point could pick up the vehicle. At the same time, Deputy Huston asked Roybal whether a towing company would work for him. Roybal and Deputy Huston talked over each other regarding these points. Deputy Huston testified that he did not recall Roybal asking him about the Breezy Point option. In response to Deputy Huston's inquiry regarding the towing company, Roybal stated, "[T]hat's fine." The police impounded Roybal's vehicle, performed an inventory search, and discovered controlled substances. The police prepared a towing report that listed property in the vehicle.

In support of his motion to suppress, Roybal argued that Deputy Huston "did not have a legal basis to stop [his] vehicle," that "the search of [his] vehicle was not a proper inventory search," and that "the vehicle was improperly impounded." The district court denied Roybal's motion to suppress, reasoning that "the license plate violation gave Deputy Huston a valid ground for an investigative stop" and that because "Deputy Huston had substantial evidence justifying his conclusion that [Roybal's] vehicle constituted a traffic hazard," it was reasonable for police to impound his vehicle and perform an inventory search.

*Roybal*, No. A19-0733, 2020 WL 994990, at *1-2.

Respondent's argument that Ground Two amounts to an allegation of a mere discovery violation that is not actionable since he waived any right to pursue any additional discovery is not persuasive. (Dkt 20 at 1-4.) Even assuming that Petitioner waived his rights when he agreed to proceed with a stipulated process and forgo trial, there is an issue as to whether the NCIC query searches amounted to evidence covered under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), or both. While the Eighth Circuit has not spoken on this issue, at least one Court in this District has recently held that at least in the context of a guilty plea, evidence that is not disclosed prior to a guilty plea does not amount to a violation under *Brady/Gilglio*. *See Lozoya v. City of Cloquet*, No. 21-CV-0990 (ECT/LIB), 2022 WL 37460, at *5 (D. Minn. Jan. 4, 2022) (citations omitted). However, other district courts have taken the view, relying on the Supreme Court's decision in *U.S. v. Ruiz*, 536 U.S. 633 (2002), that while impeachment evidence need not be disclosed prior to an agreed process, a court must consider with respect to *Brady* evidence whether its disclosure would have been material to a defendant's decision to proceed with a trial. *See United States v. FNU LNU*, No. 22 CR 16-LTS, 2022 WL 524956, at *1 (S.D.N.Y. Feb. 22, 2022) (citations omitted).

However, the Court need not decide this issue here, as Petitioner does not dispute that his license plate light was not working at the time of his stop. The Eighth Circuit has "previously observed that it is well established that a traffic violation—however minor—creates probable cause to stop the driver of a vehicle. This is true even if a valid traffic stop is a pretext for other investigation." *United States v. Linkous*, 285 F.3d 716, 719 (8th Cir. 2002) (cleaned up); *see also United States v. Callison*, 2 F.4th 1128, 1131 (8th

10

Cir. 2021), *cert. denied*, 142 S. Ct. 830 (2022) ("[A]ny traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver. Here, the district court concluded that Officer Kilgore had probable cause to initiate the traffic stop because he observed that Rios's license plate was unlit in violation of Iowa law. The initial stop itself was therefore lawful.") (marks and internal citations omitted). Under Minnesota law, rear license plates must be illuminated by a rear lamp:

> License plates. Either such rear lamp or separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it legible from a distance of 50 feet to the rear. Any rear lamp or rear lamps, together with any separate lamp for illuminating the rear registration plate, shall be so wired as to be lighted whenever the headlamps or auxiliary driving lamps are lighted.

Minn. Stat. § 169.50, subd. 2. Because Petitioner has not disputed the fact that the rear license plate light was not working, the Court cannot find that the claim has sufficient merit to warrant a stay of the Amended Petition to allow Petitioner to exhaust Ground Two. Even if the Court assumes the queries show the deputy was able to read the license plate before he stopped Petitioner, given that Petitioner does not dispute there was an equipment violation in the form of a nonworking license plate light, that equipment violation was a basis for the traffic stop, even it was pretext for an investigation.

While the Court does not recommend a stay, a state prisoner who files a mixed petition comprised of exhausted and unexhausted claims can elect to abandon his unexhausted claims and proceed with an amended petition that includes only his fully exhausted claims. *See Jackson v. Domire*, 180 F.3d 919, 920 (8th Cir. 1999) (per curiam) (citations omitted). If Petitioner intends to exercise that option here, he must file an

11

entirely new amended petition that includes only fully exhausted claims 30 days from the date an order adopting this Report and Recommendation is entered, should it be adopted.. If Petitioner does not file an amended petition before that deadline, he should be deemed to have waived the option to amend, and this action should be summarily dismissed without prejudice. If Petitioner does file an amended petition, Respondent will be required to respond to each ground and include the appropriate record to allow the Court to render a decision.

## IV.     MOTION TO INCLUDE DOCUMENT (DKT. 24)

Roybal seeks to expand the record so as to provide the Court with what appears to be the license plate query searches at issue. (Dkt. 24.) A "motion to expand the record is governed by Rule 7 of the Rules Governing Habeas Corpus Cases under Section 2254, which provides that if the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition." *Mark v. Ault*, 498 F.3d 775, 788 (8th Cir. 2007) (cleaned up) (marks and citation omitted). Here, the Court has accepted as true the number of inquiries and the time of those inquiries as asserted by Petitioner in Ground Two of the Amended Complaint for the purposes of its analysis above. Therefore, a record of the actual query searches would not change this Court's decision. For these reasons, the Court recommends denial of Petitioner's Motion.

## V.     RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

    1.     Petitioner's Motion to Stay (Dkt. 4) be **DENIED**;

2. To the extent that Petitioner wishes to abandon his unexhausted claim and proceed on only with the exhausted claims, he should file an entirely new, amended petition that includes only fully exhausted claims, and he must set forth the facts supporting exhaustion for each claim. To the extent that this Report and Recommendation is adopted by United States District Judge Katherine M. Menendez, Petitioner should have 30 days from the entry of that order to file an amended petition.

3. If Petitioner does not file an entirely new, amended petition that includes only fully exhausted claims, his petition be **DISMISSED WITHOUT PREJUDICE**, and no certificate of appealability be issued.[5]

4. Petitioner's Motion to Expand the Record (Dkt. 24) be **DENIED**.

DATED: April 29, 2022                           *s/Elizabeth Cowan Wright*
                                                ELIZABETH COWAN WRIGHT
                                                United States Magistrate Judge

---

[5] A § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing in this context, Roybal must show "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This Court concludes that it is unlikely any other court, including the Eighth Circuit, would reach a conclusion contrary to that reached above.

# **NOTICE**

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).